Good morning, Your Honors. My name is Gary Svirsky. I'm also from Melbourne & Myers, Mr. Scavone's partner, and I represent the same clients, Motor Vehicle Casualty Company and Central National Insurance Company of Omaha. And you've got the same mootness holding below. We have the same, well, it's first of all, this appeal arises from different settlements in connection with three different settling insurers. And there was a motion to dismiss this appeal as well, and the district court below granted that motion. So, again, as with the first appeal you heard, this is not as to the merits. It's as to an appeal from a granting of a motion to dismiss the appeal, which was granted on three grounds. But if I'm right, the district court held that your appeal from the bankruptcy was moot? Moot, unright, and we had no standing. And the red brief argued that it was moot. I'm sorry, Your Honor? The red brief argued that it was moot. Correct. In your blue brief, you didn't say anything about mootness, and in your reply, you didn't say anything about mootness. Am I missing something in your briefs? You're missing something in the briefs. Okay. We definitely addressed all three issues. Where did you address mootness in your brief? In our reply brief, our opening brief. Either one. Well, in our opening brief. I apologize, Your Honor. We did not address mootness in our opening brief because the district court. Okay. Where, if anywhere, did you address it in your reply brief? In our reply brief. And the reason we didn't address it in our opening brief is because the issue – I misspoke when I said that the district court ruled on mootness. The district court ruled on rightness in standing. The first time that the mootness argument was raised by the appellees was in response to our appeal at this court. They never raised this below in the district court or the bankruptcy court. And in our reply brief, we addressed mootness in point one, pages three through seven of our reply brief. I'm sorry. It's right there, and I apologize. I am mixing my cases. It's right there in front of me. Okay, Your Honor. It's right there in front of me. And the buybacks in this appeal are conditioned on success in the appeal. Is that correct? Absolutely, Your Honor. This appeal, the question of mootness here. So it can't be moot. The question of mootness here can be disposed of very quickly. I apologize. I'm confusing the two cases. Okay. Just to answer Judge Canby's question, this is a very easy mootness issue. 363M will render an objection moot if a sale has gone through. This sale is expressly conditioned on the appeal, this appeal, running its course. It's right there in the settlement agreements, the three settlement agreements. So the sale was just not final at the time that we objected. There would have been nothing for us to seek a stay of because it just had not happened yet. And this is well settled under Ninth Circuit law. We cite this in our brief. The Henry Cada Investments case that this Court decided in 1981 states that where a sale is, quote, expressly conditioned on the outcome of an appeal, as this case is here, a reversal or modification of the appealed order by this Court would not affect the sale in a manner prohibited by, and it cites the predecessor to Rule 363, to Section 363. So there's just no question here about this appeal being moot. And the appellants actually admit that the payments under the settlement agreement have not been made because of the pending appeal. I mean, that seems to me to be a dispositive admission on the mootness point, nor did they, as Judge Fletcher noted, raise this until, or as it came out in my response to your question, until they responded to our appeal, our opening brief in this Court. They didn't raise it in the district court. They didn't raise it in the bankruptcy court. So I'd like to move to the question of ripeness. The settlement approval order, this, too, is an easy question because the settlement approval order is final and ripe for review under both the constitutional and prudential ripeness tests. We're not talking about a future decision here. What we're talking about is review of a bankruptcy court order that has already been entered. In fact, appellees don't really challenge this because in moving to dismiss this appeal, they fail to cite a single case where a final bankruptcy court order was found not ripe for review. Now, Ms. Fuller? I guess the ripeness issue may bleed a bit into the standing issue because the argument may be, well, any issue that harms you isn't ripe, which is another way of saying you don't have standing to contest the present order. You probably would have standing to contest an order that may be on the horizon. You're perfectly right. If all you're contesting is what's in effect now, it's ripe. Well, that's the only consideration on the ripeness question, and Your Honor is correct that it does perhaps the analysis it shouldn't, but it might bleed into the standing issue, which I can address presently. But on the ripeness question, if we're just going to deal with this in order of ripeness and then standing, that's all we have here. It's a final order. Our objection is purely legal to the order. There is no further development of the facts that needs to be conducted for this appeal, the merits of this appeal, to be made and be considered. So on the ripeness issue, that's that. But what is the immediate hardship if this court decides that the case is not ripe for review right now? What is your immediate and direct hardship? Well, the hardship question goes to standing, and I will address that right away. But I just want to be clear that under the cases, the analysis, this is not a question that goes really to ripeness. On standing, which is a separate issue, a party has standing to appeal a bankruptcy court order if it's a, quote, person aggrieved, which means that it has been directly and adversely harmed in some pecuniary manner. And this case, our appeal here, is very much like the Smith v. Arthur Anderson case that this Court decided in 2005. We cite that and discuss it extensively in our briefing. In that case, the Court held that a non-settling defendant had standing to challenge a settlement where the approval order released contribution and other claims, as is the situation here. And in the Smith case, the Court reached that decision even though it could not determine the approval order's practical effect on the settling party. In other words, in Smith, the appellant did not have to address with specificity the harms, the specific harms that it would have suffered in the way that you might in a summary judgment motion. It was only a question for standing. It's a lower bar. But it is we can here show the specific ways in which we've been injured for purposes of standing, just to demonstrate to the Court. And to do that, we need to go back to the settlement agreements themselves. Under Section 4.1.2 of the GAIC agreement, that's the Great American Insurance Company Agreement, it states that, GAIC shall have bought back the insurance rights free and clear of any and all The other agreements have effectively the same language. This is in our Record on Appeal, Exhibit 9, at page 18, what I just read from. Claim, as is defined in that agreement, as, quote, any claim, assertion of right, lawsuit, direct action, cause of action, suit or action, contribution or setup, whether sounding in tort, contract, strict liability or equity. Other provisions directly cut off appellant's rights as well. Section 4.1.3 of the GAIC agreement states that, quote, any and all rights, duties, responsibilities and obligations of GAIC created by the subject insurance policies or relating to the insurance rights shall be deemed to have terminated and to have been extinguished. On top of that, the insurance rights is defined, the insurance rights that the settling insurers are buying back are not limited to Thorpe's property rights, the property interest in the policies. The settlement agreements define the term insurance rights to include the insurance policies and, quote, any claims relating to the subject insurance policies that would arise under any theory of law, admiralty or equity. These are very broad statements of the subject matter of what is being waived, but the question is, who is waiving it? Is, these are the parties to the agreement. Is Thorpe saying, yeah, we agree we can't bring any kind of a claim, we can't bring this, we can't bring that, we can't bring, because I'm not sure how Thorpe can get in the position in an agreement of waiving some third party's claim. Well, they can't and they shouldn't. But what this does is, given this exceptionally broad language that, you know, a lot of lawyers put their head to making it as broad as possible, what that means is that under this language, we, my clients, are cut off from seeking contribution from the settling insurers. And in the way that Mr. Scaboni described in his argument, if we are ultimately responsible for, say, one-twentieth of a judgment of the liability or coverage judgment that might be assessed against us, and we want to seek the contribution that is owed by these settling insurers, these exceptionally broad releases would cut us off from doing that. Well, I mean, you sue the settling insurer for contribution, and the settling insurer says, oh, he can't do that because I agreed with somebody else that he can't sue. Right. Well, that's kind of a strange effect of a contract. I mean, I can contract out a liability to you by making an agreement with him. Well, that's what they're going to do, and that's what they would raise as a defense. And then we would be harmed by that exact scenario. Assuming that that nonsensical argument works against you. Well, but why should we be put in a position where any such argument should be made to diminish our rights at all in any way? We contracted with Thorpe to cover X ratio of liability, whatever our liability is. We shouldn't have to cover some other insurer's portion of the liability. Another way that this could come into play is that there's a coverage action that is currently stayed in the state court. The bankruptcy judge stayed the coverage action. Literally, we were a few months from going to trial in that coverage action. Thorpe didn't like the way that was proceeding. It filed for bankruptcy in the hopes of staying that action, which they did. And the bankruptcy court, even though she admitted, the judge, the bankruptcy judge admitted that she did not have authority to permanently stay the coverage action, she stayed it for 90 days and then kept rolling it over nine times. It's been stayed for two and a half years, the coverage action. When that coverage action resumes, if there is a judgment against us, we think we're going to win, but maybe we won't. If that, if there's a judgment against us, we would have to, we could arguably be responsible for the share of the settling insurers. It's all the insurers who were involved in that coverage action. Why should we be in a position then where our rights, where our, the portion we might need to pay would be increased by the amount that these settling insurers contracted out with Thorpe in the buyback? But that argument goes so broadly. That argument says the settling insurers shouldn't be allowed to settle at all. No, that's, respectfully, Your Honor. Okay, so how far does the argument take you then? Well, we don't oppose settlements. We've settled for our clients in other cases. But as I understand your argument against this settlement, it is, in your view, takes them entirely out of any obligation for contribution to you. Right. And I gather you're saying such a settlement can't be entered into? Right. Period. Or you want it reformed to carve out your situation. Exactly. I mean, this language that I read is exceptionally broad. It goes on and on, and I didn't even read all of this to you. So there is a way to tailor and structure a settlement, as has been done in other cases that I think this is kind of a sui generis sort of situation, but there are other mass tort asbestos bankruptcies where insurers have settled without impinging on other insurers' rights, without cutting off other insurers' contribution rights. And why is it that you can't raise these issues when you have a real dispute? Well, the time is now, Your Honor, because this settlement is approved now. Right. These rights are cut off now. That's it. The train will leave the station. If you deny this appeal, we will be forever harmed. We will not be able to alter this in any way at all further. This is the time to raise these arguments, and that is precise, and we did not get an opportunity to brief or argue the merits of this appeal. This was just dismissed, the appeal. So this is exactly the sort of question that should be taken up by the bankruptcy court, the district court, and hopefully resolved correctly so that we don't have to come back here on the merits of the issue. But the merits were cut off. So if they want to settle with the other insurers, God bless. But don't cut off our rights in the process. That is the crux of the matter. There is also – I see my time is up. I did want to reserve it. Well, if you've got a new point, why don't you raise it now so they know what to respond to, raise it quickly, and then we'll give you a chance to respond. Thank you, Your Honor. But let's put it on the table so they know what's up. Okay. The last point I just wanted to be very clear, two points to make, is that this also cuts off our direct rights against the settling insurers. We've been talking about contribution rights. But we also have direct rights that we could assert against the settling insurers for the way that they conducted the defense of the underlying claims. Two of the three settling insurers are primary carriers. They handle the defense of the underlying claims. If there was any – the handling of those claims, if done improperly, could give rise to claims. Okay. So a direct claim. Got that one. So that's on the table. They know that's at issue. Next one. Right. And the last point is that the harm occurs now. They will, I am sure, argue that this is premature. Our rights, if cut off at all, will be cut off by the 524G injunction. No. They are cut off now exactly for the reasons that my exchange with Judge Tonheim revealed. It's now. The obligation is to also seek additional injunctions in the – under 524G. That's a separate matter, and we'll be back here on that perhaps. But this settlement cuts off our rights. Got it. Okay. Let's hear from the other side, and while you've gone over a little, we'll make sure you have a chance to respond. Thank you, Your Honor. Thank you, Your Honors. Daniel Bussell, Petition Bogginoff and Stern, again on behalf of Thorpe Installation Company. I think that we should start maybe with the mootness, Victoria Stations issue, and then move on. Because ultimately, I don't think this case should turn on mootness, but I want to at least address it so the Court understands what our position is because I don't think it came through in our briefing because the arguments were made in reply. Victoria Stations and the Cava case do draw a distinction between a settlement order that is subject to a condition of becoming final only upon further appeal, as Judge Candy noted. And these settlements do condition certain performances, including the payment of money, by the settling insurers on a final unappealable approval order. That condition, however, is waivable by the settling insurer. That makes it different than Cava, where the condition was inscribed in the order itself and not under the control of the parties, and different from Victoria Stations, where there was a separate agreement between the buyer and the objecting party that contractually took care of the issue with respect to what would happen upon reversal on appeal, such that the 363M mootness doctrine doesn't apply. The condition waivable by the settling insurer is not the equivalent of a stay because upon waiver, Thorpe is authorized to consummate the sale. And so to say that the condition acts as if it were a stay, the statute says that it doesn't apply if a stay is granted. Therefore, it doesn't apply in this circumstance, I think is not true. And so I think that there is at least a plausible case that the cases are moot and should be dismissed under 363M as to two of the three parties. One of the insurers, Pacific, their settlement is different. There is no 363M finding and there's no buyback or 363 authorization in their settlement approval order. So the only basis for the dismissal as moot for the Pacific order would be some form of equitable mootness a la Roberts Farms. That may apply also in the Pacific case because Pacific has paid irrevocably $5 million to the estate, right? There are future payments that are conditioned upon the entry of a 524G injunction and the buyback becomes effective only upon the district court conference of the confirmation order. But there have been substantial changes in position by Pacific such that the equitable mootness doctrine may apply in that case as well. The long and the short of it is there's good reason to think that these three cases are also moot, but the mootness analysis is much more complex in this case than it is in the general case. In general, it's a laid down hand on mootness. This is complicated. And so the district court, I think, prudently. And is it correct that you did not raise the mootness argument in front of the district court? We did in a footnote in the brief suggest the possibility of mootness, but we didn't. We primarily focused on the issues of standing and rightness, and I think the district court quite prudently went on standing and rightness, which is a much more straightforward argument in these cases and avoids some of the complexities of the mootness doctrine. I just didn't want the court to think that there was no basis for mootness or that we had no response to that point. With respect to the standing rightness issue, I think Judge Candy is exactly correct that the two bleed into one another. That is, the issue is, are these appellants hurt by the entry of the approval order? And our answer is, no, they're not hurt, or if they're going to be hurt, they're going to be hurt in the future. They're not hurt yet. When they're hurt, then they can raise their issues. When the contribution rights that they hold against the settling insurers are actually impaired by some coercive action of the Federal district court in the issuance of an injunction, then they may have standing to contest that injunction and appeal it. But their argument, if I understand it right, is, okay, at that point we're hurt, but at that point we're powerless to undo the settlement that's hurting us, and we want right now to be able to object to the settlement. The settlement is not hurting them. What is hurting them in that instance is the injunction. That's the final order that's hurting them. And the injunction will be based on what? 524G of the Bankruptcy Code. And will it be not based in any way on the settlement? Well, the settlement agreement contemplates that the parties will seek an injunction from the district court, but the terms of that injunction are within the power of the parties. The power to cut off contribution rights doesn't lie with the parties. It's not in their power through their settlement to impose it. They can agree to seek it from a court. And that's what they've done. Which is essentially the point of Judge Canvey's question. Yes. I think. And so I'm sorry, I lost my train of thought. Listen. But I think that the appellants are actually correct when they say this case is like Smith. It is like Smith with one very important difference. Smith v. Arthur Anderson is a bankruptcy court case. The person agrees to standard is the applicable standard. The court recognizes that ordinarily a non-settling party does not have standing to object to a settlement between two other parties. That that rule is well established in the case law. In this circuit, in Waller, there's probably a dozen other cases that I could cite that state that a non-settling defendant doesn't have standing to oppose a settlement, not only in the bankruptcy context, but in other contexts as well, the class action context and so forth and so on. Why? Because the law favors settlement, wants to encourage settlement, especially in bankruptcy. But there's an exception. And the exception is if the court order approving the settlement constitutes a bar of rights held by the non-settling party. Well, then they have the authority to contest. In Smith, the order says, and the contribution rights are barred. And the Ninth Circuit says, well, as to that order, although ordinarily a non-settling party doesn't have standing, if the order approving the settlement specifically says bar, then they're standing. There's no bar order in this case. The orders below all specifically said nothing in this order impairs, alters, affects contribution rights. What's contemplated is a further process, the plan confirmation process, where a 524G injunction may be sought that may affect. And at that point, the issue may be right and there may be standing, but not now. I think that addresses Judge Tunheim's question as well. Let me go over my notes. With respect to the direct claims issue raised at the very end of the argument, same answer, Your Honors. As Judge Canby noted, the release and the settlement agreement is between Thorpe and the settling insurers. Those parties exchange mutual releases. They do not release claims held of whatever nature, indirect contribution-type claims or direct claims of third parties. And so these manufactured claims about tortious interference with contracts and confidentiality agreements and other so-called direct claims, to the extent they exist, we doubt that they exist. There's no obvious, there's no legal argument that establishes that such a claim exists. The claim has never been made. But if it exists, it survives entry of the approval order by the Patency Court and the dismissal below by the District Court. Both courts below found exactly that, and I don't see how you can read those agreements without concluding that that finding is not clear error. How much will the settlement agreements affect or serve as the basis for the anticipated injunction, which may or may not come about? Well, I mean, that's an interesting question. And it shows the evolving nature of this process. When these settlement agreements were first put on, the contemplation of the parties was there would simply be a bar of contribution. And the Bankruptcy Court refused to approve injunctive relief that provided for simply a bar of contribution and indirect asbestos insurance claims without reservations that are included in the confirmation order that is now before the District Court. And for all I know, the District Court may have further reservations and there may be substantial additional revisions, at which point Thorpe is not in breach of these agreements. Thorpe has exercised its best efforts to obtain the relief sought. And then there will have to be a decision made to the extent that the settling insurer feels they're not getting what they bargained for. Then there may have to be a further discussion. There was one further point I wanted to raise, Your Honor, and that was with respect to the agreements read as a whole. Mr. Sfirsky cited specific passages of the different agreements. It's difficult to follow without having the agreement in front of you. I don't know if Your Honors have the agreement in front of you. I think in reading the agreement, you have to read the agreement as a whole. And if you read the agreement as a whole, it's very clear that that agreement contemplates that until entry of a 524G injunction, contribution rights are not cut off. Otherwise, there are whole parts of the agreement that make no sense. Why are we seeking a 524G injunction if we believe contribution rights have already been extinguished? Why are there judgment reduction provisions in the agreement if we believe that contribution rights have been extinguished? Why are there provisions in the agreement that require Thorpe to, in the event contribution rights are asserted during the interregnum between approval of the settlement and issuance of the 524G injunction, that we need to seek additional relief from the bankruptcy court to the extent that we can to stay any such actions during the interim period? There are provisions in the settlement provisions that clearly contemplate this. Contribution rights of third parties are retained, and settlement jurors retain defensively their own contribution rights until entry of the 524G injunction in order to defend against that. So the settlement agreements signed by the parties with releases that admittedly have broad language with respect to claim release claims held by the parties mutually and clearly contemplate that at least until entry of a 524G injunction, third-party claims and indirect claims of contribution and infamity are not extinguished. And indeed, as I say, both courts below found expressly that in the findings of fact and conclusions of law that support the settlement approval order. Let me see if I can get this clear. You know what you want, or Thorpe knows what it wants in the injunction, but you have a number of judicial hoops to have to go through first where the terms of what you might want, what the settlement agreement suggests you might want in an injunction may be changed, may be altered significantly. And so the ultimate result is anything but clear, and therefore that's another reason why this is not ripe to address the issue now. Exactly, Your Honor. Okay. Okay. Thank you very much. Thank you very much. Response. Let's give you two minutes and see what happens. Thank you, Your Honor. You may not need all of the two. I'll try not to use all of the two. As I was sitting there taking notes and listening to opposing counsel's argument, I couldn't help but be struck that he was trying to argue the merits of the appeal after moving to dismiss our appeal  should send this back down so that we could either argue the merits of the appeal or deal properly with the releases. Quickly, the mootness point, there is no mootness point. All I heard said was that they had some basis to make an argument for mootness, but they didn't seem totally convinced by it. Obviously, they didn't raise it below, and this settlement is expressly conditioned. The sale is expressly conditioned. We don't need to go over that again. The key point I want to raise is that the argument I heard from this side of the room was, if we are hurt, we will be hurt in the future. No, that's incorrect. We are hurt today, now, by the releases, which I read, which it is contended were read out of context, perhaps. You should read the whole agreement. By all means, I encourage you to read those agreements, and you will see exactly where we're coming from. Those releases are as broad as can be imagined, and by being approved, they cut off our rights today. The 524G injunction, that will be additional harm. That will cut off our rights separately through a separate legal mechanism. But there's a separate— You know, I have a feeling that if we agree with you, hear the dispute, and affirm the settlement, you're arguing down the line that they do not cut off your rights today. Well, we are— Because there's an agreement between two parties unrelated to you. We are put in a very difficult position by this settlement, Your Honor. We have to preserve our rights today. Some time down the road in the future, somebody might throw this back in our face. But we have to be able to preserve our rights today, and who knows what argument we will face in the future. So the harm is now. There is an additional harm in that Thorpe, by entering into this settlement agreement, and by having it approved by the court, is now contractually bound to seek the 524G injunction with the broad releases separate in that injunction. So that's a separate harm. They now have to seek that additional injunction that will harm us, and if they fail, they will expose themselves to a breach of contract claim if they fail to do that. That's a separate type of harm that we— Not if they fail in the endeavor, but if they refuse to make the endeavor. Correct, Your Honor. And as it was pointed out, the bankruptcy court has now confirmed the plan. We feel it is incredibly flawed in numerous ways. We are taking an appeal to the district court. We might be before you on that in some time. We're up to three minutes. How about you take— Just one last point, Your Honor. If you disagree with us, and if you find that the settlement agreement does — these settlement agreements do not harm us, then the court should clearly say so, that our contribution, direct action, and any other claims are not cut off, so that there is no question down the road as an alternative to granting our appeal. Thank you. Thank you very much. Thank both sides for useful arguments. Thorpe Insulation v. Motor Vehicle Casualty 08568405, now submitted for decision.
judges: Tunheim, Canby, Fletcher W.